1
2
3                          **UNITED STATES DISTRICT COURT**
4                              **DISTRICT OF NEVADA**
5    ANTHONY BAILEY,                          Case No. 2:19-cv-01725-GMN-BNW
6                          Petitioner,
7          v.                                              **ORDER**
8    WARDEN BRIAN WILLIAMS[1], et al.,
9                          Respondents.

10        Petitioner Anthony Bailey, a *pro se* Nevada prisoner, filed an Amended Petition for Writ

11   of Habeas Corpus (ECF No. 110) pursuant to 28 U.S.C. § 2254, challenging his state court

12   convictions of one count of Sexual Assault with a Deadly Weapon, two counts of Possession or

13   Sale of Document or Personal Identifying Information to Establish False Status or Identity, and

14   one count of Misdemeanor Coercion.  The Court denies the remaining grounds of Bailey's

15   Petition, denies him a certificate of appealability, and kindly directs the Clerk of Court to enter

16   judgment accordingly.

17        **I.    Background**

18             **a.   Factual Background**

19        In February 2009, police responded to a domestic violence call. ECF No. 49-17 at 8.  A

20   woman, C.W., answered the door with only a t-shirt on and indicated to officers that someone

21   was inside the home. *Id*. at 8-9.  The police located Bailey and he was taken into custody. *Id*. at

22   9.  Bailey is the father of one of C.W.'s children. *Id*. at 8.  Despite not wanting to see Bailey, he

23   would find C.W. and continue to force his way into wherever she was living. ECF No. 49-19 at

24   15.  Bailey threatened to kill C.W. *Id*.

25
26   [1] The state corrections department's inmate locator page indicates that Bailey is incarcerated at
     High Desert State Prison.  Jeremy Bean is the current warden for that facility.  At the end of this
27   Order, the Court kindly directs the Clerk of Court to substitute Jeremy Bean as a respondent for
     Respondent Brian Williams. *See* Fed. R. Civ. P. 25(d).
28

On the day of his arrest, Bailey picked up C.W., and after running errands and stopping at a friend's house, they went to C.W.'s residence. ECF No. 49-17 at 10.  Bailey told C.W. that he was going to lure her brother to her house to kill her brother, because Bailey was upset with him. ECF No. 49-19 at 16.  Bailey attempted to call C.W.'s brother multiple times. *Id*.  Bailey held a knife and screwdriver in his hand. *Id*.  Bailey struck C.W. on the leg with a television remote control and said he was going to stab her in the neck and make her unidentifiable to her family. *Id*.  Baily took drugs, PCP and methamphetamine, and forced C.W. to take drugs as well. *Id*.

Bailey told C.W. that she needed a "good fuckin,'" and despite telling him no, Bailey pushed her on the bed. *Id*.  Bailey inserted sex toys in C.W.'s vagina and anus, and then put his penis in her vagina, anus, and mouth. *Id*. at 16-17.  C.W. did not consent and cried through the entire ordeal. *Id*. at 17.  Bailey removed several forms of identification, showed them to C.W., and said, "I can kill you and nobody would know who I am." *Id*.

### b. Procedural Background

Following a six-day jury trial, a jury found Bailey guilty, the state court adjudicated Bailey a habitual criminal, and sentenced him to a maximum term of life with the possibility of parole after a minimum of 10 years, plus a consecutive term of 16-48 months. ECF No. 47-2. Bailey represented himself *pro se* at trial, but he was appointed an attorney, Christopher Oram (Oram), as standby counsel. ECF No. 40-1 at 3-4.  On appeal, the Nevada Supreme Court affirmed his conviction. ECF No. 51-3.  Oram represented Bailey on direct appeal.

Bailey then filed a *pro se* state habeas Petition and following an evidentiary hearing, the state district court denied Bailey's state habeas Petition.  The Nevada Court of Appeals affirmed the state district court's denial of relief. ECF No. 54-25.  Bailey filed a second state habeas Petition that the state court dismissed as procedurally barred. ECF No. 56-8.  The Nevada Court of Appeals affirmed the denial of relief finding Bailey's second state habeas Petition was untimely and successive. ECF No. 104-4.

Bailey filed his federal habeas Petition. ECF No. 4.  The Court granted Respondents' Motion to Dismiss, in part, dismissing Ground 1(a) to the extent it relies on the Fourth

Amendment, Grounds 2(a), 3(a), 5(a), 16 and 17 as well as finding Ground 8 and the portion of Ground 1(a) alleging that the state district court erred by permitting amendment to the charging instrument after trial testimony and the presentation of evidence in violation of the Fourteenth Amendment unexhausted. ECF No. 90.

The Court granted Bailey's motion seeking a stay and abeyance and he filed a third state habeas Petition. ECF No. 104-7. The state court dismissed his third state habeas Petition as procedurally barred and the Nevada Court of Appeals affirmed. ECF Nos. 104-11, 106-1. The Court granted Bailey's motion to reopen and construed his Amended Petition as a motion to amend and granted such motion. ECF Nos. 95, 96.

Respondents moved to dismiss Bailey's Amended Petition arguing that certain claims that did not relate back to his timely-filed original Petition, claims that are procedurally barred, and claims that are not cognizable. ECF No. 118. The Court dismissed certain grounds as procedurally defaulted, but on reconsideration found that only Grounds 1, 3(c), 4, and 12 should be dismissed as procedurally defaulted. ECF No. 131. The Court now considers the merits of the remaining Grounds 2, 3(b), 5, 8, 9, 11, 13, and 14.

## II.    Governing Standards of Review

### a.    Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b.  Standard for Evaluating Ineffective Assistance of Counsel Claims

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, errors must be "so serious as to deprive

1   [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

2       Where a state court previously adjudicated the ineffective assistance of counsel claim

3   under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See*

4   *Richter*, 562 U.S. at 104-05.  In *Richter*, the Supreme Court clarified that *Strickland* and §

5   2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See*

6   *id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation

7   marks omitted).  The Court further clarified, "[w]hen § 2254(d) applies, the question is not

8   whether counsel's actions were reasonable.  The question is whether there is any reasonable

9   argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

10      When evaluating claims of ineffective assistance of appellate counsel, the performance

11  and prejudice prongs of the *Strickland* standard partially overlap. *See*, *e.g., Bailey v. Newland*,

12  263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

13  Effective appellate advocacy requires weeding out weaker issues with less likelihood of success.

14  The failure to present a weak issue on appeal neither falls below an objective standard of

15  competence nor causes prejudice to the client for the same reason—because the omitted issue has

16  little or no likelihood of success on appeal. *Id.*

17  **III.    Discussion**

18          **a.  Ground 2—Ineffective Assistance re: Failure to Argue Violations of Implied
                Acquittal Doctrine and Double Jeopardy Clause**
19

20      In Ground 2, Bailey alleges that appellate counsel rendered ineffective assistance for

21  failure to argue that his conviction violated the Implied Acquittal Doctrine and Double Jeopardy

22  Clause. ECF No. 110 at 10.  He asserts that appellate counsel failed to argue the jury's not-guilty

23  verdict for the charge of Sexual Assault With Use of a Deadly Weapon implied an acquittal for

24  Sexual Assault Without a Deadly Weapon, an alleged non-existent offense. *Id*.

25                  **i.  State Court Determination**

26  The Nevada Court of Appeals held:

27  [Bailey] claimed the district court informed the jury they could find him guilty of

28

sexual assault without the use of a deadly weapon when he was charged with sexual assault with the use of a deadly weapon. Bailey failed to demonstrate counsel was deficient or resulting prejudice because this claim did not have a reasonable probability of success on appeal. The substantive crime Bailey was charged with was sexual assault. The deadly weapon language referred to a possible enhancement he could receive if the jury found he committed the sexual assault with a deadly weapon. The jury found Bailey did not commit the sexual assault with a deadly weapon, and therefore, it was proper for the judgment of conviction to reflect he had been found guilty of sexual assault with no enhancement in accordance with the jury instruction given. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 54-25 at 3.

### ii.  Applicable Legal Standard

The Supreme Court explained in *Green v. United States*, 355 U.S. 184 (1957), the doctrine of implied acquittal: when a jury convicts on a lesser alternate charge and fails to reach a verdict on the greater charge-without announcing any splits or divisions and having had a full and fair opportunity to do so-the jury's silence on the second charge is an implied acquittal. *See Brazzel v. Washington*, 491 F.3d 976, 978 (9th Cir. 2007).  A verdict of implied acquittal is final and bars a subsequent prosecution of the same offense. *Id*.

The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after conviction; (2) a second prosecution for the same offense after acquittal; and (3) multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  This protection is designed to ensure that the court's sentencing discretion is confined to the limit established by the state legislature. *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Id*.  When evaluating whether a state legislative intended to prescribe cumulative punishments for a single criminal incident under the Double Jeopardy Clause, a federal court is bound by the state court's determination of the legislative intent. *Id*.

The United States Supreme Court held that the Double Jeopardy Clause does not preclude a state legislature from imposing cumulative punishments for a single offense. *Missouri*

*v. Hunter*, 459 U.S. 359 (1983).  The Court ruled in *Hunter*: "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. *Id*. at 480. The Nevada Supreme Court has ruled that N.R.S. § 193.165 "clearly evidences a legislative intent to impose separate penalties for the primary offense and for the use of the deadly weapon in commission of the offense." *Nevada Dep't of Prisons v. Bowen*, 103 Nev. 477, 481 (1987).

### iii.  Analysis

Bailey has failed to meet his burden of proving that the state appellate court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United State Supreme Court.  As stated by the Nevada Court of Appeals, the jurors were instructed that if they "find that a deadly weapon was not used in the commission of [Sexual Assault], but [ ] find that it was committed, then [they] shall return the appropriate guilty verdict reflecting that a deadly weapon was not used." ECF No. 45-1 at 13.  The deadly weapon enhancement was an additional penalty for the primary offense of Sexual Assault.  Here, the jury simply did not impose the separate penalty for the use of a deadly weapon in commission of the primary offense, which does not amount to an acquittal of the primary offense of Sexual Assault. The Court therefore finds that the state appellate court reasonably determined that Bailey failed to show that his appellate counsel was deficient or resulting prejudice.  Bailey is denied habeas relief for Ground 2.

### b.  Actual Innocence

Bailey references "actual innocence" in his claims asserted in Grounds 2, 3, 5, 8, and 9. He asserts that he believes he is "actually innocent," and each of his allegations is tethered to a constitutional violation.  He appears to invoke actual innocence as an argument that the State could not prove its case against him, that he was wrongfully convicted of an offense for which he was not originally charged and allegedly did not exist, and that he would not have been convicted but for the alleged constitutional errors. ECF No. 110 at 6-42.  Beyond conclusory claims, Bailey fails to assert any argument in support of his reference to actually innocence as

either a freestanding actual innocence claim or as a gateway to overcome procedural default.

The Supreme Court has not yet recognized a freestanding "actual innocence" claim as a constitutional claim. *See, e.g.*, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *but see Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable."). However, if a freestanding actual innocence claim is cognizable, to be successful on such a claim, a petitioner would be required to show "a truly persuasive demonstration of 'actual innocence.'" *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (explaining that "the threshold showing for such an assumed right would necessarily be extraordinarily high"); *see also Jackson v. Calderon*, 211 F.3d 1148, 1164 (9th Cir. 2000) (noting that "a majority of the Justices in *Herrera* would have supported a claim of free-standing actual innocence"). This "contemplates a stronger showing than insufficiency of the evidence to convict" or "doubt about his guilt." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). Under these standards, a petitioner must "affirmatively prove that he is probably innocent." *Id.* In assessing whether a petitioner has met this standard, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 555 (2006) (internal quotation marks omitted).

In addition, "[a]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). "[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. However, the Supreme Court has

cautioned that "tenable actual-innocence gateway pleas are rare. *McQuiggin,* 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'." *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). To demonstrate actual innocence to overcome a procedural bar under *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Even if a freestanding actual innocence claim is available in noncapital habeas proceedings, Bailey has not presented "a truly persuasive demonstration of actual innocence." *Herrera*, 605 U.S. at 417. To the extent Bailey asserts actual innocence to overcome any procedural bar, he fails to present any new evidence, let alone any "new reliable evidence," to support a claim of actual innocence. Accordingly, to the extent he does so, Bailey's request for federal habeas relief as it relates to actual innocence is denied.

### c. Ground 3(b)—Ineffective Assistance re: Failure to Argue that Bailey was Convicted of a Non-Existent Crime

In Ground 3(b), Bailey alleges that appellate counsel rendered ineffective assistance for failure to argue that Bailey was convicted and sentenced based on a non-existent crime. ECF No. 110 at 11. He asserts that Sexual Assault Without Use of a Deadly Weapon does not exist and is not mentioned in any criminal statutes. *Id*. at 11-12.

### i. State Court Determination

The Nevada Court of Appeals held:

Bailey claimed appellate counsel was ineffective for failing to argue Bailey was convicted of a non-existent statutory offense. Bailey claims sexual assault without the use of a deadly weapon does not exist in the statues. This claim is belied by the record. Counsel raised this claim on appeal, and it was rejected by the Nevada Supreme Court. *See Bailey v. State*, Docket No. 67108 (Order of Affirmance,

September 30, 2016). Therefore, we conclude the district court did not err by denying this claim.

ECF No. 54-25 at 3-4.

### ii.  Analysis

The Nevada Court of Appeals' decision rejecting the claim in Ground 3(b) withstands deferential review under AEDPA.  Bailey's contention that appellate counsel failed to present this claim is belied by the record because appellate counsel argued on direct appeal that his conviction and sentence was illegal because it was based on a non-existent criminal statute. *See* ECF No. 49-17 at 44.  As a result, Bailey fails to demonstrate appellate counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.  He cannot demonstrate resulting prejudice as the Nevada Supreme Court rejected the claim on appeal. Bailey is denied habeas relief for Ground 3(b).

### d.  Ground 5—Ineffective Assistance re: Failure to Argue Insufficient Evidence

In Ground 5, Bailey alleges that pretrial and appellate counsel rendered ineffective assistance for failure to argue that there was insufficient evidence to support a finding of probable cause. ECF No. 110 at 16-17.  He asserts that there was insufficient evidence that the victim was sexually assaulted. *Id*. at 17.  Bailey contends that the victim made false statements, and that the exam performed by UMC Hospital and the C.S.I. report were based on false statements as well. *Id*. at 16.

### i.  Additional Background Information

Oram was stand-by counsel for Bailey, and Oram was appointed as appellate counsel on direct appeal.  Bailey was represented by another attorney, Dan Winder (Winder), during the preliminary hearing and before filing a motion to withdraw as counsel. *See* ECF Nos. 23-1, 30-15.  After the preliminary hearing and prior to trial, Winder filed a pretrial habeas Petition arguing that there was not credible evidence to support the charges against Bailey to show probable cause. ECF No. 27-8.  Following a hearing on the habeas Petition, the state district court denied relief. ECF No. 28-11.

During the post-conviction evidentiary hearing, in response to a question as to whether

appellate counsel raised an insufficiency of the evidence claim, appellate counsel responded as follows:

> Do I believe that this case -- did we strongly disagree on the way to defend this case? Yes. Do I believe the things you're saying about [C.W.] made it so that there was -- if I had been the trial attorney do I think there was insufficient evidence to convict? I do, Mr. Bailey. I believe I would have won that case standing on my head, Mr. Bailey, if I had tried it my way, not yours. You argued that she was lying and there was no sex. I would have argued what the police officers said, you said it was a consensual act of sex with the mother of your children in the bed that you guys shared, and I would have argued it was the most obvious case in the world of consensual sex and here she was again wrongfully accusing you.

ECF No. 52-1 at 50-51.

On cross-examination, the State questioned Oram as follows:

Q      And that was my next question. When he presents you with his theory on statutes and cases, is it more often than not incorrect legally?

A      I believe so.

Q      And, therefore, when he brings you issues that he wants you to generate in your appeal, do you look at them because you have to?

A      Yes.

Q      And after you look at them and actually research them, did you discover that he was incorrect as it pertains to many of them?

A      I just didn't think if I didn't see merit in the issue, I did not raise it.

Q      And very often did you not see merit because he was just incorrect?

A      I felt that way.

Q      And, in fact, when they say a little knowledge is a dangerous thing, isn't it true that he uses many legal terms out of context?

A      Yes.

Q      He uses them incorrectly?

A      Yes. . . .

Q      Now, as far as -- you sat through the whole trial; correct?

A      I did.

Q      And you reviewed all of the prior documentation, you reviewed the prior writs and motions that had been filed before you came on the case, correct?

**A**    Yes.

**Q**    And, in fact, there was a pretrial writ filed by another attorney challenging the probable case at the preliminary hearing? . . .

**Q**    Did you in your appeal pursue every issue that you, as a very seasoned attorney, believe had any merit to it?

**A**    Yes, I did.

**Q**    And above and beyond pursuing the issues that you believe had merit, did you even pursue an issue that you knew the defendant wanted pursued and you might not have otherwise pursued it but for the fact that he wanted it?

**A**    That's correct. That was the one exception to the rule that I usually follow.

*Id*. at 99, 100-103.

### ii.    State Court Determination

The Nevada Court of Appeals held:

Bailey claimed appellate counsel was ineffective for failing to argue the courts of Nevada lacked jurisdiction to prosecute him because the victim made false statements in her 911 call and because the victim never swore out a criminal complaint against him. Bailey failed to demonstrate counsel was deficient or that this claim had a reasonable probability of success on appeal because his claim did not implicate the jurisdiction of the courts of Nevada. *See* Nev. Const. art. 6, § 6; NRS 171.010. Therefore, we conclude the district court did not err by denying this claim. [2]

> [2] To the extent Bailey argued pre-trial counsel was ineffective for failing to raise this claim in justice court or in the district court, this claim fails for the same reason as his appellate counsel claim.

ECF No. 54-25 at 4, fn 2.

### iii.    Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

The state appellate court reasonably determined that Bailey failed to demonstrate that his pretrial and appellate counsel were deficient.  Bailey's contention that his pretrial counsel was deficient for failing to challenge the sufficiency of the evidence to support a finding of probable cause is belied by the record.  Pretrial counsel filed a pretrial habeas Petition, arguing that the

grand jury did not have sufficient evidence to support the charges against him. ECF No. 27-8 at 7. The state district court denied the Petition, finding that the State met the probable cause standard required by Nevada law. ECF No. 28-6. *See Sheriff, Clark County v. Burcham*, 124 Nev. 1247, 1258 (2008) (explaining that "[t]he finding of probable cause may be based on slight, even marginal evidence," and that the State is only required "to present enough evidence to support a reasonable inference that the accused committed the offense" (internal quotation marks omitted)).

Appellate counsel is not deficient for failing to raise this claim on appeal. *See generally Knowles v. Mirzayance*, 556 U.S. 111 (2009) (the law does not require counsel to raise every available non-frivolous defense). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.* Bailey does not demonstrate that appellate counsel should have raised this claim on appeal and as noted by the state appellate court, the claim did not have a reasonable probability of success on appeal. Bailey is denied habeas relief for Ground 5.

### e. Ground 8—Ineffective Assistance re: Failure to Challenge Evidence Supporting Pretrial Custody

In Ground 8, Bailey alleges that appellate counsel rendered ineffective assistance for failure to argue that DNA evidence was fabricated or compromised. ECF No. 110 at 25-26. He asserts that the DNA evidence presented at the preliminary hearing infringed on his rights and caused him to remain in custody prior to trial. *Id.* at 26. He asserts that counsel should have challenged a report prepared by Kristina Paulette, a forensic analyst.[2] *Id.* at 25.

---

[2] The Court discusses the Paulette's forensic reports more fully in its analysis of the merits of Grounds 9 and 14 below.

### i. State Court Determination

The Nevada Court of Appeals held:

> Bailey claimed appellate counsel was ineffective for failing to argue the State offered false forensic report which caused him to be erroneously confined prior to trial. Bailey failed to demonstrate deficiency or that this claim had a reasonable probability of success on appeal because he failed to demonstrate these reports were the only reason he was confined prior to trial. Further, he failed to allege or demonstrate his pretrial confinement affected his ability to prepare for trial. Accordingly, we conclude the district court did not err by denying this claim.

ECF No. 54-25 at 6-7.

### ii. Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of *Strickland* and is not based on unreasonable determinations of fact in the state court record. Bailey fails to demonstrate deficiency or a reasonable probability of a different outcome on appeal. During the post-conviction evidentiary hearing, appellate counsel testified that if he "didn't see merit in the issue, [he] didn't raise it." ECF No. 52-1 at 100. As noted by the state appellate court, Bailey failed to demonstrate that these alleged falsified reports were the only reason he was confined prior to trial. In fact, his pretrial counsel successfully argued for Bailey's release on house arrest. ECF No. 27-6 at 8. Bailey, however, violated the terms of house arrest. ECF No. 28-3. In addition, Bailey had seven prior convictions and multiple aliases. Bailey is denied habeas relief for Ground 5.

### f. Ground 11—Ineffective Assistance re: Failure to Challenge Material Witness Warrant

In Ground 11, Bailey alleges that appellate counsel rendered ineffective assistance for failing to object to the State's *ex parte* communication with the state district court requesting a material witness warrant for, C.W., the victim. ECF No. 110 at 31. He asserts that the jury should have been made aware that C.W. was threatened with incarceration and the removal of her children to appear. *Id*. at 32.

### i. Additional Background Information

At the post-conviction evidentiary hearing, appellate counsel testified that he did not

14

view this issue as having merit:

> **Q** Well, isn't *ex parte* frowned upon in this -- in the judiciary process?
>
> **A** Yes. Mr. Bailey, if the prosecutor went back and talked to the judge about the facts, what did you think of that witness, do you think that witness is particularly credible, what do you think the jury is thinking, that would be highly improper. What you're describing, the *ex parte* application, I have seen that done and I am not sure that that is frowned upon. I have never -- I have never read any case that would give rise to me being able to raise that -- that as an issue, or I did not see that as an issue, sir.
>
> **Q** Well, let me ask you a question. If -- if the victim says, hey, man, I'm through with this stuff, I don't want to be a part of this trial crap anymore, wouldn't it have been kind of right for the jury to know that in order for the witness to have come to court, the prosecution had to go into the judge's chamber in secrecy to obtain a material witness warrant in order to bring the -- the alleged victim to court to testify in a case where they are the victim? Wouldn't a jury -- wouldn't that have been important for a jury to know? …
>
> **THE COURT:** Well, it assumes facts -- well, I mean, we -- we -- Mr. Oram has testified that there was a material witness warrant that was obtained.
>
> **[THE STATE]:** Correct, but the warrant was never served.
>
> **THE DEFENDANT:** Well, according to the criminal minutes -- …
>
> **THE COURT:** So the warrant was never served?
>
> **[THE STATE]:** No, the warrant was never -- no. Sorry. The warrant was never served. It was obtained just in case.

ECF No. 52-1 at 15-16.

### ii.  State Court Determination

The Nevada Court of Appeals held:

> Bailey claimed appellate counsel was ineffective for failing to argue the State engaged in improper *ex-parte* communication to obtain a material witness warrant for the victim. Bailey claimed the State sought the warrant to ensure the victim provided perjured testimony and he should have been able to inform the jury the victim was threatened with arrest. Bailey failed to demonstrate counsel was deficient or that this claim had a reasonable probability of success on appeal. Bailey failed to demonstrate it was improper for the State to seek the material witness warrant. *See* NRS 178.494. Further, the material witness warrant was never served and Bailey failed to demonstrate the victim had knowledge the warrant was sought and that it caused her testimony to be untruthful. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 54-25 at 8.

### iii.  Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

Bailey appears to conflate *ex parte* communications with a permissible *ex parte* motion or request to the state district court confirming C.W.'s status as a material witness and that C.W. had threatened that she would not appear at trial. ECF No. 40-2 at 4. *See* NRS § 178.494.  His contention that the State and the state district court engaged in *ex parte* communications intended to coerce C.W.'s testimony is belied by the record as the warrant was, nonetheless, never served on the victim.  In addition, the record does not demonstrate that the victim had even known about the material witness warrant.  Bailey fails to demonstrate deficiency or resulting prejudice as "failure to raise a meritless argument does not constitute ineffective assistance." *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985), *cert. denied*, 474 U.S. 1085 (1986).  Bailey is denied habeas relief for Ground 11.

### g.  Ground 13—Ineffective Assistance re: Court Appointment

In Ground 13, Bailey alleges appellate counsel rendered ineffective assistance because he was a court appointed "independent contractor." ECF No. 110 at 36.  He asserts that he was appointed counsel due a conflict of interest with the Office of the Public Defender. *Id*.  He asserts that counsel failed to raise successful claims in his defense. *Id*.

### i.  State Court Determination

The Nevada Court of Appeals held:

> Bailey claimed that because counsel was an "independent contractor" hired by the State to represent him, counsel was ineffective. Bailey failed to demonstrate the fact his appellate counsel was appointed to represent him affected counsel's ability to effectively represent him on appeal. Counsel testified at the evidentiary hearing that he raised all of the issues he felt were meritorious and he raised one issue he knew was important to Bailey but did not believe was meritorious. Bailey failed to demonstrate any omitted issues would have been meritorious on appeal. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 54-25 at 10.

### ii.  Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of *Strickland* and is not based on unreasonable determinations of fact in the state court record.

During the post-conviction evidentiary hearing, appellate counsel testified that attorneys must uphold the same ethical standards whether they are court appointed or hired as private attorneys and that he had a duty to represent Bailey. ECF No. 52-1 at 10-11.  As noted by the Nevada Court of Appeals, appellate counsel raised claims that he deemed meritorious as well as a claim that was important to Bailey.  An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 691. *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021).  The Court finds that the state appellate court reasonably determined that Bailey failed to show prejudice because he cannot show that any omitted issues would have been meritorious on appeal.  Bailey is denied habeas relief for Ground 13.

### h.  Grounds 9 and 14—Trial Court Error re: Excluded Evidence

Bailey asserts similar claims and arguments in support of his claims asserted in Grounds 9 and 14.  In Ground 9, Bailey alleges that the trial court erred by preventing forensic lab employees from testifying in violation of his rights. ECF No. 110 at 27-28.  In Ground 14, he alleges that the trial court improperly excluded evidence and witnesses in violation of his right to present a complete defense. *Id*. at 39-42.

### i.  Additional Background Information

Paulette, a forensic analyst assigned to run the DNA samples in this case, tested the victim's vaginal, oral, and rectal swabs. ECF No. 43-1 at 134.  However, there was an issue with Paulette's report, which the State explained as follows:

> When she cut the defendant, Anthony Bailey's, swab, she did -- she made a mistake and she threw that out and started over. The problem was not that she made a mistake; the problem was that she didn't write in a report, I made a mistake a threw it out and started over. She just started over. . . . Well, you're not allowed to do that. That's a big, big no-no in the scientific field. So a corrective action report was generated saying she did this thing wrong. Ultimately, there was internal things and she lost her job.

*Id*. at 135.  Another forensic analyst, Julie Marschner, retested the samples, in addition to testing

the cervical swab that Paulette failed to test.  Marschner found Bailey's DNA on all of the swabs.

*Id*. at 135-36.  The State did not enter any of the reports into evidence at trial.

### ii.  State Court Determination

In affirming the judgment of conviction on direct appeal, the Nevada Supreme Court

held:

> [Bailey] was not improperly precluded from impeaching witnesses. First, because
> the State did not present any DNA evidence, appellant did not have a right under
> the Confrontation Clause to present evidence to impeach the forensic scientist he
> called as a witness. Additionally, the evidence of an irregular DNA report and
> subsequent corrective action report would only have served to confuse the jury, as
> the second DNA report came to the same conclusion as the irregular report, and
> thus, the district court did not abuse its discretion in precluding such evidence. *See*
> NRS 48.035(1) (excluding relevant evidence where its probative value is
> substantially outweighed by the danger of confusing the issues or misleading the
> jury).

ECF No. 51-3 at 5-6.

### iii.  Applicable Legal Standard

"[T]he Constitution [also] guarantees criminal defendants 'a meaningful opportunity to

present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California

v. Trombetta*, 467 U.S. 479, 485 (1984)).  A defendant's opportunity to be heard "would be an

empty one if the State were permitted to exclude competent, reliable evidence ... when such

evidence is central to the defendant's claim of innocence." *Id.*  This is because, "[i]n the absence

of any valid state justification, exclusion of ... exculpatory evidence deprives a defendant of the

basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful

adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The United States Supreme Court, however, has "never questioned the power of States to

exclude evidence through the application of evidentiary rules that themselves serve the interests

of fairness and reliability—even if the defendant would prefer to see that evidence admitted."

*Crane*, 476 U.S. at 690. *See also United States v. Scheffer*, 523 U.S. 303, 308 (1998).  In fact, the

Supreme Court has indicated its approval of "well-established rules of evidence [that] permit

trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).  Evidentiary rules do not violate a defendant's constitutional rights unless they "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 324 (alteration in original) (internal quotation marks omitted). *See also Scheffer*, 523 U.S. at 315 (explaining that the exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only where it "significantly undermined fundamental elements of the accused's defense").  Indeed, "[o]nly rarely ha[s the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013).

Even when a state evidence rule permits the exclusion of evidence, a court conducting a Confrontation Clause analysis must go further and determine that the restriction on the defendant's right to confront the witness is not "arbitrary or disproportionate" to the purposes the state evidence rule was designed to serve. *See Michigan v. Lucas*, 500 U.S. 145, 151 (1991).  The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI.  "[A] criminal defendant states a violation of the Confrontation Clause by showing that the was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors … could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

The right to cross-examine is not limitless. *Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027, 1037 (9th Cir. 2005).  Trial judges "retain wide latitude" to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

#### iv.  Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

The Nevada Supreme Court's conclusion is objectively reasonable as the exclusion of the evidence did not deny Bailey the right to present a complete defense or to cross-examine witnesses.  The trial court determined that the irregular DNA report and the corrective action report would only confuse the jury as the report was subsequently conducted according to procedures and produced the same result.  The trial court's exclusion of evidence did not significantly undermine fundamental elements of Bailey's defense.  The State did not enter the DNA reports into evidence.  The trial court provided that "if the defense wants to bring in the correct laboratory analysis, [the trial court] would let the defense do that." ECF No. 43-1 at 157-58.  In addition, Bailey called Marschner to testify regarding the DNA reports, including Paulette's report. *Id*. at 211-20, ECF No. 44-1 at 1-50.

Bailey did not demonstrate that the exclusion of the evidence was arbitrary or disproportionate to the purpose of the state's evidentiary rule.  The Court finds that the state appellate court reasonably determined that the trial court did not abuse its discretion in precluding such evidence.  Accordingly, Bailey is denied habeas relief for Grounds 9 and 14.

### IV.  Certificate of Appealability

This is a final order adverse to Bailey.  Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner*, 281 F.3d at 864-65.  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For procedural

rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, the Court finds that a certificate of appealability is unwarranted.

**V.    Conclusion**

IT IS HEREBY ORDERED that Petitioner Anthony Bailey's Amended Petition for Writ of Habeas Corpus (ECF No. 110) is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that the Court kindly directs the Clerk of Court to substitute Jeremy Bean for Respondent Brian Williams, enter judgment, and close this case.

DATED:    July 2, 2025

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE